# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>MARLIN SANTANA THOMAS,<br><br>Defendant. | Case No. 25-cr-58-LTS-MAR<br><br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

_____

## *I.       INTRODUCTION*

On July 9, 2025, the Grand Jury charged Defendant with four counts of Sex Trafficking Victims by Force, Fraud, and Coercion in violation of 18 U.S.C. Sections 1591(a)(1) and 1591(b)(1) and four counts of Transportation of Victims for the Purpose of Prostitution Through Coercion and Enticement in violation of 18 U.S.C. Section 2422(a).  (Doc. 3.)

The matter before the Court is Defendant's Motion to Dismiss.  (Doc. 42.)  The Government timely filed a resistance (Doc. 50) and Exhibit 1 (Southern District of Iowa case 18-cr-51 Plea Agreement; Doc. 50-1).  Defendant filed a reply.  (Doc. 79.)  The Honorable Leonard T. Strand, United States District Court Judge, referred the motion to me for a Report and Recommendation.

On December 19, 2025, I held a hearing on Defendant's Motion to Dismiss Indictment for Breach of Plea Agreement and Vindictive Prosecution or in the Alternative to Compel Production of Internal Documents.  (Doc. 87.)  At the hearing, Government Exhibit 1 (Doc. 50-1) and Government Exhibits 1-3 (Docs. 80-1, 80-2, 80-3) were admitted without objection.  (Doc. 87.)  On January 12, 2026, Defendant filed a Motion for Hearing to Reopen Record of Hearing on Motion to Dismiss for Breach of Plea

1

Agreement and Vindictive Prosecution. (Doc. 91.) I granted Defendant's motion and held a hearing on January 26, 2026. (Doc. 96.) Defense Exhibit C (Doc. 88-3) and Defense Exhibits D-V (Docs. 95.1-95-19) were admitted without objection. (Doc. 96.) On May 12, 2026, Defendant filed a Second Motion for Hearing to Reopen Record of Hearing on Motion to Dismiss for Breach of Plea Agreement and Vindictive Prosecution. (Doc. 99.) I granted the motion and held a hearing on May 27, 2026. (Docs. 103, 105.) Defense Exhibits W-Y were admitted without objection under seal. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Dismiss.

## II. DISCUSSION

### A. Facts

Defendant was previously prosecuted in the Southern District of Iowa in two relevant indictments: a 2018 indictment for conspiracy to distribute heroin and a 2020 indictment for sex trafficking offenses. Defendant pleaded guilty in both cases pursuant to separate plea agreements. Ultimately, the Eighth Circuit Court of Appeals overturned Defendant's conviction on the 2020 sex trafficking indictment because it was barred by the plea agreement executed to conclude the 2018 heroin conspiracy charge. Before turning to the facts underlying the current prosecution, I recommend the Court turn to the Eighth Circuit's opinion for an authoritative statement of the underlying facts from the two Southern District prosecutions. *United States v. Thomas*, 58 F.4th 964, 968 (8th Cir. 2023), *reh'g denied*, No. 21-3690, 2023 WL 2674461 (8th Cir. Mar. 29, 2023). I will summarize the facts most pertinent to the issues before this Court.

Officers from the Des Moines Police Department ("DMPD") arranged controlled buys of heroin from Defendant. When executing a search warrant, law enforcement located G.B., an alleged sex-trafficking victim who purchased heroin from Defendant or exchanged sex for heroin. Information from G.B. led to a search of Defendant's

2

cellphone and tablet and, in turn, evidence of Defendant's advertisements for sex trafficking. Defendant was charged with drug trafficking to "get him off the street." A grand jury returned a five-count indictment for heroin-related offenses against Defendant. On May 21, 2018, the district court accepted Defendant's plea pursuant to a written plea agreement in the heroin case. Defendant admitted that he conspired to distribute heroin and admitted that he distributed heroin in the controlled drug purchases. He also admitted possessing heroin with intent to distribute it on the date that law enforcement executed the search warrant on his home. He did not admit to any sex-trafficking conduct. The Eighth Circuit noted that there was no indication that the parties specifically negotiated or discussed the meaning of the "No Further Prosecution" clause. Defendant was sentenced to 48 months' imprisonment on the heroin charges.

Meanwhile, DMPD officers and Southern District Assistant United States Attorneys ("AUSAs") continued to investigate Defendant's alleged sex-trafficking activities. Ultimately, law enforcement identified and interviewed eight victims. In August 2020, Defendant was indicted on seventeen counts of sex trafficking, facilitating prostitution, and drug offenses. Defendant moved to dismiss the indictment, arguing that the 2020 17-count indictment arose out of the 2018 investigation and was barred by the 2018 plea agreement. The district court denied the motions on all counts but one.[1] Defendant pled guilty to six of the remaining counts in exchange for dismissal of the other counts. He reserved his right to appeal the denial of the motion to dismiss and was sentenced to life imprisonment on each count, to be served concurrently. *Thomas*, 58 F.4th at 967-70.

---

[1] Prior to resolution of the motion to dismiss, the Government voluntarily dismissed two counts of the 17-count indictment.

FBI Special Agent Erik Thysse[2] testified at the December 19, 2025 hearing. The FBI began participating in a sex-trafficking investigation in the Northern District of Iowa involving Defendant in December 2023, initially by a different FBI Agent, Special Agent Kent Moore. The file in the FBI office in the Northern District of Iowa was opened in May 2024 when Special Agent Thysse became involved. Special Agent Thysse testified that he was unaware of any FBI participation in the original investigation of sex-trafficking for which Defendant was charged in the Southern District of Iowa. (Thysse Hr'g Test. at 7.) Special Agent Thysse stated that during the investigation he subpoenaed documents (including electronic information and hotel information) from different organizations, interviewed witnesses, and interviewed potential victims. He also reviewed the case file from the Southern District of Iowa investigation. Special Agent Thysse testified that his investigation was focused on determining whether criminal activity had occurred in the Northern District of Iowa. (*Id.* at 7-8.) Prior to the Government informing him of Defendant's civil lawsuit (Gov. Ex. 3) in the Southern District of Iowa on the morning of the December 19, 2025 hearing, Special Agent Thysse was unaware of the lawsuit and testified it did not motivate the prosecution or investigation of the instant case. (*Id.* at 9.)

**B.     *The Parties' Arguments***

Defendant argues that the "2018 plea agreement bars prosecution in the Northern District of Iowa." (Doc. 42-1 at 5.) Defendant asserts that "the evidence here points to the government attempting to circumvent its contractual and constitutional obligations [under the 2018 plea agreement] by delegating the case to the Northern District, such that the Northern District is also barred from prosecuting [Defendant]." (*Id.* at 7.) Defendant notes that the "information presented to the Eighth Circuit for the prior sex-trafficking

---

[2] Special Agent Thysse has been an FBI agent for approximately two years. Prior to joining the FBI, Special Agent Thysse was an electrical engineer. (Thysse Hr'g Test. at 7.)

charges and facilitation of prostitution involving E.J., J.W., L.G., and K.D. was based on an investigation between Des Moines Police Department and AUSAs from the Southern District, not the Northern." (*Id.* at 9.) Defendant concludes that the "Court should dismiss the indictment for breach of the plea agreement." (*Id.* at 10.)

Defendant also argues that the Government has "engaged in vindictive prosecution by continuing to prosecute [him]." (*Id.*) Defendant maintains that the "record of [his] prior conviction and subsequent success on appeal provides sufficient direct evidence of vindictive prosecution." (*Id.* at 11.) Defendant also argues that the "timing, context and objective circumstances present a reasonable likelihood of vindictiveness." (*Id.* at 13.) Specifically, Defendant asserts that the timing is suspect because the Government "was aware of [Defendant's] actions since at least 2018." Despite this knowledge, "[y]ears later, only after [Defendant] successfully appealed his conviction and sentences, the Northern District indicted him." (*Id.*) Defendant also asserts that:

> The context and objective circumstances are also suspect. First, the 2025 indictment alleges criminal acts towards four of the victims covered by the investigation that began in 2018: E.J., J.W., L.G., and K.D. The likely main difference is that now apparently the criminal conduct extended to the Northern District. Second, none of the counts seem to allege new conduct, instead referencing conduct from 2009 through 2015, predating even the beginning of the 2018 investigation by several years at least. And third, the investigation conducted by both the Southern District federal authorities and Des Moines Police Department centered on conduct occurring in the Southern District, not the Northern.

(*Id.* at 13-14.) Defendant maintains that "[n]ow that [the government entity, the Southern District of Iowa] is foreclosed from prosecuting [Defendant] on the sex trafficking charges, it arguably delegated the case to a sister entity, the Northern District." (*Id.* at 14.) Defendant concludes that the "Court should dismiss the indictment for vindictive prosecution." (*Id.*)

5

Lastly, Defendant argues that "[a]t a minimum, [Defendant] made a sufficient showing of vindictive prosecution to warrant production of internal documents related to how the Northern District of Iowa became involved." (*Id.*) Defendant requested from the Government and did not receive the following documents: (1) all preindictment notes, e-mails, memorandum, and correspondence with investigatory agencies related to this case; (2) all correspondence between the United States Attorney's Office for the Southern District and the Northern District related to this case; and (3) any other related documents in the possession of either the United States Attorney's Office for the Southern District or the Northern District. (*Id.* at 15.) Defendant "requests that the Court compel the government to provide discovery to each of these [types of documents]." (*Id.*) Defendant argues that he made "a sufficient showing of vindictive prosecution to at least receive the internal documents likely in possession of either the USAO for the Southern or Northern Districts of Iowa, and cannot proceed further without additional documentation." (*Id.*) Defendant concludes that the "Court should allow [him] to pursue targeted discovery regarding how after all these years, only now is the Northern District getting involved." (*Id.* at 17.)

The Government argues that the "2018 plea agreement does not bar prosecution in the Northern District of Iowa." (Doc. 50 at 4.) The Government maintains that the "plain language of the 2018 plea agreement binds only the United States Attorney's Office for the Southern District of Iowa." (*Id.* at 5.) Specifically, the Government points out that "the 2018 plea agreement includes specific language that the term 'Government' refers only to the U.S. Attorney's Office for the Southern District of Iowa, and that it binds only that U.S. Attorney's Office." (*Id.* at 7.)

Next, the Government argues that "Defendant is unable to satisfy the heavy burden for establishing vindictive prosecution." (*Id.* at 10.) Specifically, the Government argues that Defendant has provided no "objective evidence of the prosecutors' vindictive

6

motive." (*Id.* at 11.) The Government also points out that it "did not add additional or more severe charges in the 2025 Indictment; indeed, the 2025 Indictment includes nine fewer counts than the 2020 Superseding Indictment." (*Id.*) Additionally, the Government asserts that "entirely different prosecutors from two separate Department of Justice Offices—the Northern District of Iowa and the Human Trafficking Prosecution Unit within the Civil Rights Division—have brought the new charges; the prosecutors involved in the 2020 case are not prosecuting the current case." (*Id.* at 12.)

Finally, the Government argues that "Defendant is not entitled to discovery on the vindictive prosecution claim." (*Id.* at 15.) Pursuant to Federal Rule of Criminal Procedure 16(a)(2), the Government contends that the "plain language of this Rule bars the defendant from receiving his requested discovery of internal Department of Justice documents." (*Id.* at 16.) The Government concludes that Defendant "has not met the 'rigorous' standard for discovery of his vindictive prosecution claim and is not entitled to discovery of the requested materials." (*Id.* at 19.)

## C. The 2018 Plea Agreement

### 1. Relevant law

Courts "'generally interpret the meaning of the terms in [a plea] agreement according to basic principles of contract law." *United States v. Carneal*, 91 F.4th 903, 906 (8th Cir. 2024) (alteration in original) (quoting *United States v. Thomas*, 58 F.4th 964, 971 (8th Cir. 2023), in turn quoting *United States v. Collins*, 25 F.4th 1097, 1100 (8th Cir. 2022)). "'This involves "discern[ing] the intent of the parties as expressed in the plain language of the agreement when viewed as a whole."'" *Id.* (alteration in original) (quoting *Thomas*, 58 F.4th at 971, in turn quoting *United States v. Lara-Ruiz*, 681 F.3d 914, 919 (8th Cir. 2012)). "When ascertaining the intent of the parties, the language of the agreement, if unambiguous, should ordinarily be conclusive." *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 351 (8th Cir. 1994) (citations omitted). "Allowing the

government to breach a promise that induced a guilty plea violates due process." *Thomas*, 54 F.4th at 971. Thus, courts "construe ambiguities in a plea agreement against the government." *Id*. "The party asserting the breach . . . has the burden of establishing a breach." *United States v. Leach*, 562 F.3d 930, 935 (8th Cir. 2009) (quotation omitted).

### 2. Application

The 2018 plea agreement provides in pertinent part:

> 3. No Further Prosecution. The Government agrees that Defendant will not be charged in the Southern District of Iowa with any other federal criminal offense arising from or directly relating to this investigation. . . .

> 21. Limited Scope of Agreement. This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement. . . .

> 22. Agreement Limited to Southern District of Iowa. This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

(Doc. 50-1 at 1, 6.)

Because Defendant relies primarily on *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) (per curiam), I will address it in some detail. In April 1992, Ahmad Mohammad Ajaj ("the defendant") traveled from his home in Texas to a "terrorist training camp" on the Afghanistan-Pakistan border. *Id*. at 107. While in Pakistan, the defendant met Ramzi Ahmed Yousef. *Id*. Later in 1992, the defendant and Yousef formulated a terrorist plan and traveled to New York under assumed names. The defendant carried a "terrorist kit" that he had assembled in Pakistan, which included: "handwritten notes [the defendant] had taken while attending explosives courses, manuals

8

containing formulae and instructions for manufacturing bombs, materials describing how to carry-off a successful terrorist operation, videotapes advocating terrorist action against the United States, and fraudulent identification documents." *Id*. The defendant and Yousef arrived in New York on September 1, 1992, using false names and passports. At customs, inspectors discovered that the defendant's passport had been altered and searched his belongings. Agents seized the defendant's "terrorist kit" and placed him under arrest. The defendant was indicted in the United States District Court for the Eastern District of New York for passport fraud. The defendant pled guilty and was sentenced to six months' imprisonment. *Id*.

Meanwhile, Yousef was arrested for entering the United States without a visa but was eventually released on his own recognizance. Yousef assembled a group of co-conspirators to implement the bombing plot that he and the defendant had hatched in Pakistan. The co-conspirators began obtaining materials to construct a bomb. *Id*. at 107-108. During this period, even though the defendant was incarcerated, he remained in telephone contact with Yousef. In February 1993, the co-conspirators rented a van and drove the bomb-laden van to the World Trade Center. The co-conspirators detonated the bomb, killing six people, injuring more than one-thousand others, and causing hundreds of millions of dollars of damage. *Id*. at 108.

In September 1993, the defendant and other co-conspirators were indicted in the United States District Court for the Southern District of New York on various charges relating to their participation in the bombing of the World Trade Center. *Id*. The defendant was convicted and sentenced to 240 years' imprisonment. *Id*.

Among other things, the defendant argued that his prosecution for bombing the World Trade Center was "barred by the express terms of his plea agreement regarding the passport fraud charges in the Eastern District of New York." *Id*. at 118. The defendant argued that:

9

the United States Attorney's Office for the Eastern District of New York . . . improperly passed along work to the United States Attorney's Office for the Southern District of New York . . . to circumvent a restriction on its own ability to prosecute [the defendant] on charges stemming from [the defendant's] role in the World Trade Center bombing.

*Id*.  The defendant's plea agreement on the fraudulent passport charge in the Eastern District of New York contained the following language: "[t]his agreement is limited to the United States Attorney's Office for the Eastern District of New York and cannot bind other federal, state or local prosecuting authorities."  *Id*. at 119 (alteration in original). The Second Circuit Court of Appeals determined that:

Here, [the defendant] presents no evidence that the parties to the Eastern District plea agreement contemplated that it would bar the prosecution of [the defendant] in any district other than the Eastern District.  Indeed, the explicit terms of the Eastern District plea agreement expressly limited the plea agreement to the Eastern District of New York.  Moreover, assuming that the plea agreement would bar the Eastern District prosecutor's office from prosecuting [the defendant] for crimes arising from the World Trade Center bombing, [the defendant] presents no evidence that the Eastern District prosecutor's office attempted to circumvent a restriction on its authority to prosecute by transferring its work to the Southern District prosecutor's office.  The Southern District prosecutor's office independently investigated criminal offenses arising from the World Trade Center bombing and filed an indictment in the Southern District charging [the defendant] with crimes that were distinct from the passport fraud charges in the Eastern District.  We therefore affirm the district court's denial of [the defendant's] motion.

*Id*. at 120.

Defendant focuses on the following language from *Salameh*: "[t]he Southern District [of New York] prosecutor's office independently investigated criminal offenses arising from the World Trade Center bombing and filed an indictment in the Southern District charging [the defendant] with crimes that were distinct from the passport fraud charges in the Eastern District [of New York]."  152 F.3d at 120.  Defendant argues

10

that, "[b]y contrast the evidence here points to the government attempting to circumvent its contractual and constitutional obligations by delegating the case to the Northern District [of Iowa], such that the Northern District is also barred from prosecuting Mr. Thomas." (Doc. 42-1 at 7.) Defendant's reading of *Salameh* is incorrect.

Here, like in *Salameh*, and bearing in mind that Defendant has the burden of establishing the breach, *see Leach*, 562 F.3d at 935, Defendant presents no evidence that the parties to the Southern District of Iowa plea agreement contemplated that it would bar the prosecution of Defendant in any district other than the Southern District. *See Salameh*, 152 F.3d at 120. The plain and unambiguous language of the Southern District plea agreement expressly limited the plea agreement to the Southern District of Iowa. *See id.*; *see also Carneal*, 91 F.4th at 906; *Margalli-Olvera*, 43 F.3d at 351. Indeed, the Southern District plea agreement stated: "This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities." (Doc. 50-1 at 6.)

Further, Defendant presents no evidence that United States Attorney's Office for the Southern District of Iowa "attempted to circumvent a restriction on its authority to prosecute by transferring its work to the" United States Attorney's Office for the Northern District of Iowa. *Salameh*, 152 F.3d at 120. Moreover, Special Agent Thysse testified that his investigation included reviewing the case and investigation from the Southern District of Iowa case, but also that he subpoenaed documents (including electronic information and hotel information) from different organizations, interviewed witnesses, and interviewed potential victims. (Thysee Hr'g Test. at 7-8.) Special Agent Thysse also testified that his investigation was focused on determining whether criminal activity had occurred in the Northern District of Iowa. (*Id.* at 8.) On the record before me, I find that the United States Attorney's Office for the Northern District of Iowa made

11

a sufficiently independent investigation of criminal offenses arising from Defendant's alleged sex trafficking and filed an indictment in the Northern District charging Defendant with sex trafficking crimes that occurred *in* the Northern District of Iowa. The nature of crimes alleged against Defendant and the victims involved in the instant Northern District case are very similar to the crimes and victims in the Southern District case, but the crimes committed in the Northern District are distinct from earlier crimes Defendant successfully appealed. Granted, as compared to *Salameh*, the nature of the crimes in the instant case is not so obviously different. In *Salameh* the differences between passport fraud and bombing a building are obvious. Here, the obvious difference is not in the nature of the allegations or even the identity of victims, but in the geography. The United States Attorney's Office and FBI investigated this case to determine whether Defendant committed crimes *in* the Northern District of Iowa.

*Salameh* notes without analysis that the Southern District of New York "independently" investigated criminal offenses related to the bombing. This has occasioned dispute among the parties to the instant case about whether the investigation leading to the instant prosecution was sufficiently independent. To some extent the *Salameh* reference appears to be dicta. At least it is not clear where the "independent investigation" requirement comes from or what constitutes a failure to conduct an "independent investigation." In theory, if United States Attorneys from the Southern District of Iowa were somehow actually in charge of the instant prosecution and merely pulling the strings of the Northern District prosecutors, Defendant might establish that the Northern District is somehow bound to the plea agreement under an alter ego theory. However, that has not been alleged and no evidence has been marshaled to support such a theory or to support discovery into it, as discussed below. In addition, Defendant has not cited authority for the proposition that the Government's review and reliance on

12

investigative materials generated during the Southern District of Iowa investigation make the investigation in the Northern District insufficiently independent.

Accordingly, I find that the 2018 Southern District of Iowa plea agreement does not bar prosecution of Defendant in the Northern District of Iowa and recommend that the Court deny Defendant's motion on this ground.

**D.     *Vindictive Prosecution***

### *1.     Relevant law*

"Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right." *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015); *see also United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005) ("Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness."). "The defendant has the burden to demonstrate that the 'prosecution was brought in order to punish [him] for the exercise of a legal right,' and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is 'a heavy one.'" *Williams*, 793 F.3d at 963 (alteration in original) (quoting *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004)).

"A vindictive or improper motive may be proved either by direct or circumstantial evidence." *Leathers*, 354 F.3d at 961. "A defendant can establish prosecutorial vindictiveness through objective evidence"; or alternatively, "the defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness." *Campbell*, 410 F.3d at 461. Put another way, "[a] defendant can prove such impermissible prosecutorial vindictiveness with objective evidence of the prosecutor's vindictive or improper motive"; or "[a]bsent such evidence, a defendant may, in rare instances, rely upon a presumption of vindictiveness, . . . if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists[.]" *United*

13

*States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015) (quotations omitted). The Eighth Circuit Court of Appeals has explained that:

> "To determine whether the presumption of vindictiveness applies, 'the court must examine the prosecutor's actions in the context of the entire proceedings.'" *United States v. Saltzman*, 537 F.3d 353, 359–60 (5th Cir. 2008) (quoting *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983) (en banc)). Because a vindictive prosecution "claim asks a court to exercise judicial power over a 'special province' of the [President and his delegates to enforce the law]," *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)), "'[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties,'" *id*. (alteration in original) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).

*Id*. at 880 (alterations in original). "A presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness." *Campbell*, 410 F.3d at 462. As noted above, "[t]he defendant's evidentiary burden is a heavy one, and we are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *Chappell*, 779 F.3d at 879 (quoting *Leathers*, 354 F.3d at 961).

### 2.    *Application*

Defendant asserts that "[t]he record of Mr. Thomas' prior conviction and subsequent success on appeal provides sufficient direct evidence of vindictive prosecution." (Doc. 42-1 at 11.) Defendant's assertion is the only "direct" and "objective" evidence that he offers of vindictiveness. *See Campbell*, 410 F.3d at 461. This statement falls far short of the heavy burden Defendant must demonstrate to "prove such impermissible prosecutorial vindictiveness with objective evidence of the

14

prosecutor's vindictive or improper motive." *Chappell*, 779 F.3d at 879; *see also Williams*, 793 F.3d at 963 ("[T]he defendant's burden to show vindictive prosecution is a heavy one.") (Quotation omitted).  Further, Defendant offers no objective evidence that prosecutors in the Northern District of Iowa pursued the indictment against him to punish him for exercising his appellate rights.  *See Williams*, 793 F.3d at 963.

Turning to the presumption of vindictiveness, Defendant contends that "the timing, context and objective circumstances present a reasonable likelihood of vindictiveness." (Doc. 42-1 at 13.)  As for timing, Defendant asserts that the Government "was aware of Mr. Thomas' actions since at least 2018" in the Southern District of Iowa, and "[y]ears later, only after Mr. Thomas successfully appealed this conviction and sentences, the Northern District [of Iowa] indicted him."  (*Id.*)  However, "[a] presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness."  *Campbell*, 410 F.3d at 462; *see also United States v. Goodwin*, 457 U.S. 368, 384 (1982) ("[A] mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule"); *Williams*, 793 F.3d at 963 ("[T]iming alone is insufficient to trigger the presumption of vindictiveness.").

As for context and circumstances, Defendant argues that "[t]he same government entity that prosecuted Mr. Thomas for heroin charges in 2018 to get him off the street, included a No Further Prosecution clause in the plea agreement related to sex trafficking charges" and "[n]ow that that entity is foreclosed from prosecuting Mr. Thomas on the sex trafficking charges, it arguably delegated the case to a sister entity, the Northern District [of Iowa]."  (Doc. 42-1 at 14.)  Defendant's argument is unpersuasive.  First, as discussed above, the "No Further Prosecution" clause in the Southern District of Iowa plea agreement is expressly limited to the Southern District United States Attorney's

Office and does not apply to the Northern District of Iowa or preclude the Northern District's prosecution of Defendant for crimes committed *in* the Northern District.

Furthermore, the instant Indictment contains nine fewer counts than the 2020 superseding indictment litigated in the Southern District, as the instant Indictment is limited to crimes committed in the Northern District.  Moreover, as the Government points out, "entirely different prosecutors from two separate Department of Justice Offices—the Northern District of Iowa and the Human Trafficking Prosecution Unit within the Civil Rights Division—have brought the new charges; the prosecutors involved in the 2020 case are not prosecuting the current case.  (Doc. 50 at 12.)  Nothing about these circumstances points to a vindictive prosecution as opposed to a legitimate desire to obtain a conviction.  Here, had Defendant's conviction been upheld by the Eighth Circuit, he might never have been indicted in the Northern District of Iowa.  There may be prudential or policy reasons that underly the Government's decision *not* to charge under those circumstances.  Nevertheless, the mere fact that Defendant's Southern District convictions were ultimately overturned does not mean that a decision to prosecute in the Northern District is *ipso facto* proof, or even evidence of, a vindictive motive.

Based on the foregoing, I find that Defendant's arguments are unpersuasive, and Defendant has failed to present evidence to demonstrate that the context and circumstances provide a reasonable likelihood of vindictiveness.  *See Williams*, 793 F.3d at 963.  Accordingly, I find that Defendant has failed to meet the heavy burden of establishing prosecutorial vindictiveness and recommend that the Court deny Defendant's motion on this ground.

### E.    *Discovery*

Here, Defendant seeks the following discovery: (1) all preindictment notes, e-mails, memorandum, and correspondence with investigatory agencies related to this case; (2) all correspondence between the United States Attorney's Office for the Southern

16

District and the Northern District related to this case; and (3) any other related documents in the possession of either the United States Attorney's Office for the Southern District or the Northern District. (Doc. 42-1 at 15.)

To merit discovery in a vindictive prosecution case, the defendant "first make a preliminary or threshold showing of the essential elements of" vindictive prosecution and when the defendant "alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Aanerud*, 893 F.2d 956, 961 (8th Cir. 1990) (quotations omitted); *see also United States v. Long*, No. 6:23-CR-03063-BCW-1, 2025 WL 3722015, at *6 (W.D. Mo. Dec. 23, 2025) (To merit further discovery . . . on a vindictive prosecution claim, a defendant must allege sufficient facts to take the question past the frivolous state and raise reasonable doubt as to the prosecutor's purpose") (citation omitted); *United States v. Abdi*, No. 23-cr-295 (ECT/DJF), 2024 WL 323577, at *4 (D. Minn. Jan. 29. 2024) ("To obtain discovery . . . on this issue, a defendant cannot rest on vague or conclusory allegations, but must allege specific facts sufficient to raise a significant doubt that the government's decision to prosecute was vindictive.") (Quotation omitted). Also, under Federal Rule of Criminal Procedure 16(a)(2), the Rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *Id*. Recently, in *United States v. Littlehawk Eagleelk*, where the defendant was seeking pre-indictment memorandums, emails, notes, and correspondence with investigating agency related to his case and any related documents on filing the current charge during the prior prosecution, this Court determined that:

> After discussing the cases cited by Eagleelk, Judge Mahoney concluded:
>
> > Eagleelk has not identified, nor have I found, caselaw allowing discovery of documents such as those requested

herein, when the defendant did not have some objective evidence supporting vindictiveness, relying solely on timing and circumstances akin to the present case. In a case denying discovery of internal government memoranda, another court in this circuit refused to allow the discovery of government documents relating to charging decisions or plea negotiations and noted that the defendant did not present, and the court has not found any cases in which a defendant was granted discovery of these protected materials for a vindictive prosecution claim.

Doc. 60 at 16 (citing *United States v. Glenn*, No. 5:14-CR-50115, 2017 WL 318791, at \*1 (D.S.D. Jan. 23, 2017). Thus, she concluded Eagleelk failed to show he was entitled to discovery on his vindictive prosecution claim. *Id.*

Based on my de novo review, I agree that Eagleelk is not entitled to discovery on his vindictive prosecution claim. He cannot show that the Government chose to charge him solely for exercising a legal right as opposed to pursuing another charge that was supported by the facts in the prior case, given that he was acquitted of the prior charges. His other evidence is related to timing or sequence of events that alone cannot be a basis for a vindictive prosecution claim. The arguments in his objections regarding the routine nature of firearm possession charges and the Government's delay in pursuing the charge also relate to timing. Like Judge Mahoney, I am aware of no legal authority authorizing the type of discovery Eagleelk seeks under these circumstances. As such, his request to compel discovery in support of his vindictive prosecution claim is denied.

No. CR25-4005-LTS-KEM, 2026 WL 1195527, at \*5 (N.D. Iowa May 1, 2026).

Here, like in *Eagleelk*, and as discussed in detail above, Defendant has not made the threshold showing of vindictive prosecution and therefore is not entitled to the discovery requested. Also, like in *Eagleelk*, I can find no legal authority authorizing the

18

type of discovery Defendant seeks.[3]    Accordingly, I recommend the Court deny Defendant's motion for discovery.

### III.    CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Dismiss (**Doc. 42**).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 2nd day of July, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

---

[3] Defendant relies primarily on *United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989) and *United States v. Abrego*, 802 F.Supp.3d 1055 (M.D. Tenn. 2025), but these cases are of no help to him because in both cases the defendant made the requisite threshold showing for discovery in a vindictive prosecution case, which Defendant has not done here.

19